UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| VANESSA EVANS-RHODES | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | |
| | § | Civ. Action No. 4:13-cv-01626 |
| NORTHWEST DIAGNOSTIC | § | |
| CLINIC, P.A. | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM & ORDER**

This case arises out of Plaintiff Vanessa Evans-Rhodes's ("Plaintiff's" or "Ms. Evans-Rhodes's") employment with — and termination by — Defendant Northwest Diagnostic Clinic, P.A. ("Defendant" or "Northwest Diagnostic"). Before the Court is Defendant's Motion to Dismiss the First Amended Complaint. (Doc. No. 14.) After considering the Motion, all responses and replies, and the applicable law, the Court concludes that the Motion should be **GRANTED**.

**I. BACKGROUND[1]**

**A. Factual Background**

Most of the relevant facts are set out in the Court's first Memorandum & Order (Doc. No. 12); the Court assumes familiarity with that document. The First Amended Complaint (hereinafter "FAC") does provide some relevant addition details, however, regarding Plaintiff's troubles at Northwest Diagnostic. It explains that, from the start of her tenure, "Sonya Taylor spoke to Plaintiff and other African Americans in a demeaning manner, often questioned [Plaintiff's] work, and generally treated her and her African American co-worker as if they were

---

[1] For the purposes of a motion to dismiss, the Court takes Plaintiff's factual allegations as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

1

inferior." (Doc. No. 13 ¶ 8.) On the other hand, it alleges that "Ms. Sonya Taylor treated non-African American co-workers in a preferential manner." (*Id.*) The FAC goes on to allege that supervisor Pam Audish permitted Taylor "to begin supervising Plaintiff and another African American co-worker" and that "[d]espite the fact that Ms. Taylor was simply a co-worker and not situated in a position with actual supervisory authority over Plaintiff . . . Taylor was allowed to require Plaintiff and her African American counter-part, Ms. Johnson, to give her full access to their calendars so that she could track and monitor their work load and general whereabouts." (*Id.* ¶ 9.) Taylor did not supervise colleagues who were not African American. *Id.*

The FAC also clarifies the nature of the highly offensive comment referenced in the original complaint. Plaintiff alleges that "during a discussion regarding weight, Ms. Taylor stated that she was analyzing her weight by 'white people's standards' and Plaintiff would not understand because she was African American." (*Id.* ¶ 10.) The FAC reiterates that Plaintiff "immediately complained about the discriminatory behavior to her supervisor, Pam Audish." (*Id.* ¶ 12.) Plaintiff also complained to the Human Resources Director, Kim Taylor, about Sonia Taylor's "discriminatory behavior as well as [a] racially derogatory comment." (*Id.* ¶ 14.) Plaintiff avers that when she "attempted to lodge her complaint with her supervisor, Ms. Audish as well as Kim Taylor . . . Plaintiff had a reasonable good faith belief that Sonia Taylor's discriminatory behavior towards African American employees as well as the discriminatory comment made directly to her was unlawful and illegal in the workplace." (*Id.* ¶ 15.)

Further, the FAC pleads that, within four days of Plaintiff's complaints, Audish "issued Plaintiff a written reprimand for taking too much time off" and that "Audish and the company's general counsel, Mr. Jonathan Ishee[,] had a rather intimidating conversation with Plaintiff [to the effect] that she was a bad employee because of her absences." (*Id.* ¶ 17.) The FAC adds that

"[t]his was disconcerting to Plaintiff as prior to her employment she had made it abundantly clear to Ms. Audish that she needed a flexible schedule because she also had a second job." (*Id.*)

The FAC also alleges that, "instead of addressing and investigating Plaintiff's complaint, her supervisor, Ms. Audish, allowed Sonya Taylor to have free reign to supervise her. Specifically, Plaintiff could no longer complete any duties unless Ms. Sonya delegated her to do so." (*Id.* ¶ 18.) And, it alleges that "Ms. Sonya sent emails to Ms. Amy Hullet stating that Plaintiff along with another African American co-worker, Ms. Georgia Johnson[,] were incompetent and were incapable of performing their jobs." (*Id.* ¶ 19.) Moreover, it avers that "Ms. Taylor had all of [Plaintiff's] work as well as Ms. Georgia Johnson's work shredded because [Sonia Taylor] considered it 'trash.'" (*Id.* ¶ 20.)

Additionally, the FAC explains that, following her complaint to Ms. Audish, Plaintiff was moved to a new cubicle and her new neighbor was told "not to talk to Ms. Rhodes or at least to keep it to a minimum." (*Id.* ¶ 21.) And, whereas Ms. Audish allegedly made few trips to that part of the office prior to Plaintiff being moved there, she purportedly began "visit[ing] that area numerous times per daily" after Plaintiff was relocated. (*Id.* ¶ 22.) Plaintiff asserts that, once she was terminated, Ms. Audish stopped visiting that area with such frequency. (*Id.* ¶ 23.)

The FAC provides new details about Plaintiff's termination as well. It alleges that, while Defendant has claimed Plaintiff was fired for eating at her desk, an eye witness reports that Plaintiff was doing no such thing and was in fact only working. (*Id.* ¶ 23.) Further, Ms. Audish allegedly "approached Plaintiff in a really 'ugly accusatory manner'" and requested that Plaintiff leave before she summoned Human Resources. (*Id.*)

3

### B. Procedural Background

Plaintiff avers that she has filed a Charge of Discrimination with the EEOC and that the EEOC made a Determination of Retaliation in her favor and issued a notice of right to sue. (*Id.* ¶¶ 4.) Plaintiff filed her original complaint in this Court on June 3, 2013, alleging race discrimination and retaliation, pursuant to both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*, and 42 U.S.C. § 1981, and a hostile work environment under Title VII. (Doc. No. 1) Defendants moved in July to dismiss under Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 5), and the Court granted that motion in part and denied it in part. (Doc. No. 12.) It allowed the race discrimination claims to go forward but dismissed the retaliation and hostile work environment causes of action. (*Id.*) It granted Plaintiff leave to replead, which she timely did. (Doc. No. 13.) Defendant then filed its Motion to Dismiss the Amended Complaint. (Doc. No. 14.)

## II.  LEGAL STANDARD

The Court set forth the standard for a motion to dismiss for failure to state a claim in its first M&O. A court may dismiss a complaint for a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief — including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to

4

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The plausibility standard "is not akin to a 'probability requirement,'" though it does require more than simply a "sheer possibility" that a defendant has acted unlawfully. *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). Thus, a pleading need not contain detailed factual allegations, but must set forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

As for a motion to dismiss for lack of subject-matter jurisdiction, "[a] case is properly dismissed under Rule 12(b)(1) when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.,* 143 F.3d 1006, 101 (5th Cir. 1998). A finding that the court lacks subject matter jurisdiction may be based upon: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Barrera-Montenegro v. United States,* 74 F.3d 657, 659 (5th Cir. 1996). The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

### III. ANALYSIS

#### A. Hostile Work Environment

Defendant has moved to dismiss Plaintiff's hostile work environment claim for lack of subject matter jurisdiction, arguing that Plaintiff failed to include that claim in her EEOC Charge. (Doc. No. 14 at 7.) "It is well-settled that courts have no jurisdiction to consider Title VII claims as to which the aggrieved party has not exhausted administrative remedies." *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 711 (5th Cir.

1994). The Fifth Circuit has "held that 'a judicial complaint filed pursuant to Title VII may encompass any kind of discrimination like or related to allegations contained in the charge and growing out of such allegation during the pendency of the case before the Commission.'" *Id.* (quoting *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 466 (5th Cir. 1970)). Courts are to "interpret[] what is properly embraced in review of a Title–VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.'" *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006) (quoting *Sanchez,* 431 F.2d at 466). Indeed, the court of appeals has asked that lower courts "engage in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label." *Id.* (citations omitted). Underlying the exhaustion requirement is the idea that both the EEOC and Defendant deserve notice of Plaintiff's claims, the former so that it can conduct a proper investigation and the latter so that it can ameliorate practices deemed to be improper and, if necessary, ably defend itself in court.

Here, Plaintiff's EEOC Charge only referenced the one comment about "White people's standards" for weight and Plaintiff's ultimately futile attempt to seek redress from her supervisor. (Doc. No. 14-1 at 2.) She checked the boxes for race discrimination and retaliation. *Id.* There is *nothing* in that Charge itself that would suggest that the EEOC needs to investigate whether a hostile work environment existed or indicate to Defendant that it might have a problem more pervasive than one insensitive employee.

Nevertheless, Plaintiff maintains that she alleged facts sufficient to support a hostile work environment claim in handwritten notes that she attached to her EEOC intake questionnaire. (Doc. No. 15 at 10.) The Fifth Circuit has not definitively ruled on whether that questionnaire,

6

or notes attached to it, can be considered in analyzing whether administrative remedies have been exhausted. A fairly recent Northern District of Texas case surveyed relevant Fifth Circuit and district court precedent and decided that, "when determining whether a claim has been exhausted . . . the court may also consult related documents, such as a plaintiff's affidavit, her response to the EEOC questionnaire, and attachments to the response, when (1) the facts set out in the document are a reasonable consequence of a claim set forth in the EEOC charge, and (2) the employer had actual knowledge of the contents of the document during the course of the EEOC investigation." *Hayes v. MBNA Tech., Inc.*, No. CIV.A.3:03-CV1766-D, 2004 WL 1283965, *6 (N.D. Tex. June 9, 2004). At least one court within this district has relied on the rule announced in *Hayes*. *Cooper v. Wal-Mart Transp., LLC*, 662 F. Supp. 2d 757, 773 (S.D. Tex. 2009) (considering handwritten notes attached to the charge itself, not to the intake questionnaire); *see also Martin v. Tyson Foods, Inc.*, No. CIV.A. H-10-2047, 2011 WL 1103657, at *3 (S.D. Tex. Mar. 23, 2011) (adhering to rule announced in *Hayes*). This Court will do likewise.

Consequently, the focus turns to whether the facts in Plaintiff's handwritten notes are a reasonable consequence of a claim set forth in the EEOC charge and whether Northwest Diagnostic had actual knowledge of the contents of the document during the EEOC investigation. The Court answers the first in the affirmative, but the second in the negative.

First, that Plaintiff would complain of Ms. Taylor's treatment over time, and seek to show all examples of how Ms. Taylor and Ms. Audish may have had something against her, is a clear consequence of her race discrimination claim. In the handwritten notes, Plaintiff complained of the following:[2]

---

[2] The copies of the notes that Plaintiff has submitted are barely legible. (*See* Doc. No. 15-1 at 1-4.) Plaintiff has provided a lengthy summary of what those notes assert, (*see* Doc. No. 15 at 10-12), though, of course, *summary*

- Requests for supplies made by African Americans were not processed nearly as expeditiously as those made by Ms. Taylor;
- Ms. Taylor decided to shred documents that Plaintiff and Ms. Johnson, the other African American employee, worked on for months;
- Plaintiff and Ms. Johnson had to share access to their calendars with Ms. Taylor but were not afforded a reciprocal privilege;
- Ms. Taylor sent Plaintiff "demanding and conflicting e-mails" requesting to dictate when she worked on various assignments;
- Ms. Taylor told Rhodes and Johnson that they could not work together as a team;
- Ms. Taylor "changed [Plaintiff's] work process at her leisure";
- Ms. Taylor told Plaintiff to perform mock audits instead of real ones;
- Ms. Audish "created a hostile environment by" allowing Ms. Taylor's allegedly improper treatment to continue.
- Ms. Audish allowed Ms. Taylor to single out Plaintiff;
- Ms. Taylor sent Amy Hullet an e-mail that said Plaintiff and Ms. Johnson were incompetent and incapable of doing their jobs;
- On her last day working for Defendant, Plaintiff was accused of eating at her desk and then was told to "leave, leave now" or else Ms. Audish would "get HR".

(Doc. No. 15-1 at 1-4.) The Court has little doubt that these allegations are a "reasonable consequence" of Plaintiff's claim that she was discriminated against on the basis of race.

But, second, with respect to whether Defendant had actual knowledge of the allegations made in the handwritten notes, Plaintiff's arguments flounder. Plaintiff relies upon notes taken by Northwest Diagnostic's Human Resources Department as evidence of that knowledge. None of the allegations made in the handwritten notes, however, is explicitly discussed in the HR notes. To be sure, the notes indicate that HR knew that Plaintiff and Ms. Taylor did not get along, that Plaintiff believed Ms. Taylor was "treating her in an inferior manner and like she is incompetent," that Ms. Taylor's desk was moved away from Ms. Johnson's, and that Plaintiff was frustrated by how Ms. Audish handled Plaintiff's complaint. (Doc. No. 15-2 at 1.) The HR notes also reveal that Defendant knew about Ms. Taylor's alleged "white people standards" comment. *Id.*

---

means that the Court has not been provided with an exact transcript of what the notes say. Still, Defendant has not taken issue with Plaintiff's account of what the notes say; Defendant instead argues that the notes are insufficient to provide notice of the hostile work environment claim.

Keeping in mind that Plaintiff bears the burden here, without greater overlap between Plaintiff's handwritten notes and the HR notes, the contents of the latter are insufficient to show that Defendant had actual knowledge of the allegations made in the former. That Defendant knew that Plaintiff did not get along with Ms. Taylor is vastly different from knowledge of all of the specific events discussed in Plaintiff's notes. And that Defendant clearly knew of an unpleasant interpersonal relationship is hardly enough to put it on notice of a potential hostile work environment claim. Had the HR notes revealed full knowledge of each and every occurrence described in Plaintiff's notes, the outcome may have been different. But, because the most that the Court can say is that a member of Defendant's Human Resources Department knew of the general tenor of Plaintiff's allegations, it cannot conclude that Defendant possessed "actual knowledge of the contents of the document during the course of the EEOC investigation."

In sum, the Court will not rely on the handwritten notes attached to Plaintiff's EEOC intake form. It must therefore conclude that Plaintiff failed to administratively exhaust her hostile work environment claim. It is dismissed.

### B. Retaliation

As the Court explained in its first M&O, to establish a *prima facie* case of retaliation under Title VII, Plaintiff must show that "(1) she participated in an activity protected by Title VII; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the materially adverse action." *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 484 (5th Cir. 2008). "'Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII.'" *Ackel v. Nat'l Communications, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003) (quoting *Green v. Administrators*

9

*of the Tulane Educational Fund*, 284 F.3d 642, 657 (5th Cir. 2002)). The Court added that Plaintiff need not have pleaded all the elements of retaliation to survive a motion to dismiss, but "the Court may explore the plaintiff's *prima facie* case at the dismissal stage to determine 'whether the plaintiff can ever meet his initial burden to establish a *prima facie* case.'" *Brantley v. Kempthorne*, No. CIV.A. 06-1137ESH, 2008 WL 2073913, at *6 (D.D.C. May 13, 2008) (quoting *Rochon v. Ashcroft,* 319 F. Supp. 2d, 23, 29 (D.D.C. 2005)).

In that earlier M&O, the Court found that Plaintiff had pleaded that Defendant took an adverse employment action against her and that the Court could infer a causal relationship between the two. The Court was unsure, however, whether Plaintiff expressed "opposition to any practice rendered unlawful by Title VII . . . or participat[ed] in any investigation, proceeding, or hearing under Title VII." Ackel, 339 F.3d at 385 (citation omitted).

The Court noted that the first clause, the so-called 'opposition clause,' was at issue. "Magic words are not required, but protected opposition must at least alert an employer to the employee's reasonable belief that unlawful discrimination is at issue." *Brown v. United Parcel Serv., Inc*., 406 F. App'x 837, 840 (5th Cir. 2010). The Court thus explained that, to state a viable retaliation claim, Plaintiff needs to have believed that the comment she reported constituted an unlawful employment practice. And even if she did, her belief cannot run counter to settled federal law. The Court inferred that Plaintiff subjectively believed she was opposing an unlawful employment practice. But, it held that the events Plaintiff had reported could not, as a matter of law, amount to race discrimination or an actionable hostile work environment. It therefore determined that Plaintiff had not pleaded sufficient facts from which this Court could infer a plausible retaliation claim.

10

All that has changed since the first M&O is that the FAC indicates that Plaintiff told her supervisor not just of one offensive comment, but also of Ms. Taylor's "differing standard of treatment toward African American employees." (Doc. No. 13 ¶ 12.) The Court explained in its first M&O why a single racially insensitive comment could not on its own support a hostile work environment claim, and thus that it could not be said that Plaintiff opposed an unlawful employment practice as is necessary for a retaliation claim. That Plaintiff has added to her Complaint that she opposed a colleague's disparate treatment of white and African American individuals has not changed the Court's mind. The Fifth Circuit has made quite clear that evidence, or allegations, as the Court construes in the present posture, of "disparate treatment" cannot be equated with the sort of evidence, or allegations, of "racially discriminatory intimidation, ridicule or insult" necessary to substantiate a hostile work environment claim. *Fentroy v. Dillard Tex. Operating Ltd. P'ship*, 277 F.3d 1373, 2001 WL 1485798, at *3 (5th Cir. 2001) (unpublished); *see also Broussard v. Tex. Dep't of Criminal Justice*, No. CIV.A. H-04-1059, 2006 WL 1517532, at *7 (S.D. Tex. May 30, 2006) (Ellison, J.) (applying *Fentroy*).

In short, the Court does not find it "plausible" that Plaintiff opposed a hostile work environment, such as would be independently actionable, and thus **GRANTS** Defendant's Motion to Dismiss Plaintiff's retaliation claim.

## IV.　LEAVE TO AMEND

Federal Rule of Civil Procedure 15 provides that this Court "should freely give leave when justice so requires." *Cole v. Sandel Med. Indus., LLC.,* 413 Fed. App'x. 683, 688 (5th Cir. 2011) (quoting Fed. R. Civ. P. 15(a)(2)). In considering whether to grant leave to amend, the Court may weigh multiple factors, including undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice, and futility. *Wimm v. Jack Eckerd Corp.,* 3 F.3d

137, 139 (5th Cir. 1993); *see also United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 270 (5th Cir. 2010) (holding that denial of leave to amend may be appropriate when amendment would be futile); *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000) (holding that a proposed amendment is futile if "the amended complaint would fail to state a claim upon which relief can be granted"). Because Plaintiff has already been afforded a chance to replead both of these claims, and has again failed to survive a motion to dismiss, the Court now believes amendment would be futile. Leave to replead is therefore **DENIED**.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is **GRANTED**. Those claims are **DISMISSED WITH PREJUDICE**. The case, however, should not be closed, as Plaintiff's race discrimination case survived the initial Motion to Dismiss.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this 19th day of February, 2014.

*/s/ Keith P. Ellison*

**KEITH P. ELLISON**
**UNITED STATES DISTRICT COURT JUDGE**